## Case No. 10,091.

### NEILSON v. GARZA.

[2 Woods, 287.] [1]

Circuit Court, E. D. Texas. March Term, 1876.

CONSTITUTIONAL LAW—STATE INSPECTION LAWS—CHARGES—REGULATION OF COMMERCE—REVISION BY CONGRESS.

1. The right to make inspection laws is not granted to congress, but is reserved to the states; nevertheless. it is subject to the paramount right of congress to regulate commerce with foreign nations and among the several states.

2. If any state, as a means of executing its inspection laws, imposes any duty or impost on imports or exports, such duty or impost is void if it exceeds what is absolutely necessary for executing such inspection laws.

3. As the article of the constitution of the United States which prescribes the limit within which inspection charges shall be kept, goes on to provide that "all such laws shall be subject to the revision and control of congress," congress is the proper authority to decide whether a charge or duty is or is not excessive.

[Cited in Turner v. Maryland, 107 U. S. 55, 2 Sup. Ct. 59; Patapsco Guano Co. v. Board of Agriculture, 52 Fed. 694.]

4. Therefore if a law passed by a state is really an inspection law, it must stand until congress sees fit to alter it, even though the fee allowed by it is in effect an impost or duty on imports or exports.

5. The scope of inspection laws is very large and is not confined to articles of domestic produce or manufacture, but applies also to articles imported and to those intended for domestic use.

6. The act of the legislature of Texas, approved October 14, 1871 [Gen. Laws 1871, p. 112], and the further act, approved March 23, 1874 [Laws 1874, p. 33], entitled "for the encouragement of stock-raising and the protection of stock-raisers," are inspection laws and are constitutional.

[This was a bill brought by Henry Neilson against Mariana Trevino Garza, state inpector of hides for Cameron county, Tex., for the purpose of testing the constitutionality of the Texas inspection laws.] Heard upon pleadings and evidence for final decree.

Stephen Powers and Nestor Maxan, for complainant, cited Gibbons v. Ogden, 9 Wheat. [22 U. S.] 203; Brown v. Maryland, 12 Wheat. [25 U. S.] 419; Story, Const. §§ 1004, 1017, 1024; Clintsman v. Northrop, 8 Cow. 46; Hancock v. Sturges, 13 Johns. 331; Ferris v. Ccles, 3 Caines, 212; Shoemaker v. Lansing. 17 Wend. 327.

J. R. Cox, for defendant.

BRADLEY, Circuit Justice. The complainant in this case resides in Matamoras, Mexico, and is largely engaged in the business of importing hides from that city to Brownsville, in Texas, and sending the same thence via the port of Brazos Santiago, in Texas, to New York.

The defendant is inspector of hides and animals for Cameron county, Texas, at Brownsville, appointed and acting under an

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

act of the legislature of Texas, approved October 14, 1871, and a further act, approved March 23, 1874, entitled for "the encouragement of stock raising and the protection of stock raisers." By virtue of his said office, the defendant claims and exercises the right to inspect the hides imported as aforesaid by the complainant, and to exact and receive and does exact and receive therefor, in accordance with said law, fees at the rate of from six to ten cents per hide, according to the number inspected.

The complainant contends that this exaction is in reality an impost or duty on the importation or exportation of said hides, and that it is contrary to those clauses of the constitution of the United States which declare that congress shall have power "to regulate commerce with foreign nations and among the several states;" and that "no state shall, without the consent of congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." It is not pretended that congress has granted any consent in the case; and the complainant insists that congress, in making the importation of hides free from duty, has regulated the subject, and no state regulation can have any force or effect, but all such regulations are void.

If the state law of Texas, which is complained of, is really an inspection law, it is valid and binding unless it interferes with the power of congress to regulate commerce, and if it does thus interfere, it may still be valid and binding until revised and altered by congress. The right to make inspection laws is not granted to congress, but is reserved to the states; but it is subject to the paramount right of congress to regulate commerce with foreign nations, and among the several states; and if any state, as a means of carrying out and executing its inspection laws, imposes any duty or impost on imports or exports, such impost or duty is void if it exceeds what is absolutely necessary for executing such inspection laws. How the question, whether a duty is excessive or not, is to be decided, may be doubtful. As that question is passed upon by the state legislature, when the duty is imposed, it would hardly be seemly to submit it to the consideration of a jury in every case that arises. This might give rise to great diversity of judgment, the result of which would be to make the law constitutional one day, and in one case, and unconstitutional another day, in another case. As the article of the constitution which prescribes the limit goes on to provide that "all such laws shall be subject to the revision and control of congress," it seems to me that congress is the proper tribunal to decide the question, whether a charge or duty is or is not excessive. If, therefore, the fee allowed in this case by the state law is to be regarded as in effect an impost or duty on imports or exports, still if the law is really an inspection law, the duty must stand until congress shall see fit to alter it.

Then we are brought back to the question whether the law is really an inspection law. If it is, we can not interfere with it on account of supposed excessiveness of fees. If it is not, the exaction is clearly unconstitutional and void, being an unauthorized interference with the free importation of goods. The complainant contends that it is not an inspection law; that inspection laws only apply legitimately to the domestic products of the country, intended for exportation; and that no inspection is actually required in this particular case, but a mere examination to see if the hides are marked, and who imported them, etc., duties which belong to the entry of goods, and not their inspection.

No doubt the primary and most usual object of inspection is to prepare goods for exportation in order to preserve the credit of our exports in foreign markets. Chief Justice Marshall, in Gibbons v. Ogden, says: "The object of inspection laws is to improve the quality of articles produced by the labor of a country; to fit them for exportation, or it may be, for domestice use." 9 Wheat. [22 U. S.] 203; Story, Const. § 1017. But in Brown v. Maryland, he adds, speaking of the time when inspection takes place: "Inspection laws, so far as they act upon articles for exportation, are generally executed on land before the article is put on board a vessel; so far as they act upon importations, they are generally executed upon articles which are landed. The tax or duty of inspection is a tax which is frequently, if not always, paid for service performed on land." 12 Wheat. [25 U. S.] 419; Story, Const. § 1017. So that, according to Chief Justice Marshall, imported as well as exported goods may be subject to inspection; and they may be inspected as well to fit them for domestic use as for exportation. All housekeepers who are consumers of flour know what a protection it is to be able to rely on the inspection mark for a fine or superior article. Bouvier defines inspection as the examination of certain articles made by law subject to such examination, so that they may be declared fit for commerce. Law Dict. verb. "Inspection." The removal or destruction of unsound articles is undoubtedly, says Chief Justice Marshall, an exercise of that power. Brown v. Maryland, supra; Story, Const. § 1024. "The object of the inspection laws," says Justice Sutherland, "is to protect the community, so far as they apply to domestic sales, from frauds and impositions; and in relation to articles designed for exportation, to preserve the character and reputation of the state in foreign markets." Clintsman v. Northrop, 8 Cow. 46. It thus appears that the scope of inspection laws is very large, and is not confined to articles of domestic produce or manufacture, or to articles intended for exporation, but applies to articles

imported, and to those intended for domestic use as well.

An examination of some of the actual inspection laws of the different states shows that this is the fact: Thus, in Alabama, the city authorities of Mobile are authorized to appoint inspectors, and to adopt regulations (to be approved by the governor) for the inspection of staves, tobacco, pitch, tar, turpentine, rosin, fish, flour and oil, within the limits of the city. Many of these articles must be articles of import. In Massachusetts, fish intended for exportation are to be inspected, whether inspected previously in another state or not. Pearson v. Purkett, 15 Pick. 264. In Kentucky, under the inspection laws of that state, imported salt cannot be sold in the state until it has been inspected, and three cents inspection fees are chargeable for each barrel inspected. The inspection laws of North Carolina are very full, and, amongst other things, provisions and forage imported from out of the state, such as beef, pork, fish, flour, butter in firkins, cheese in boxes, hay or fodder, bacon in hogsheads, etc., must be inspected before they can be sold, on pain of $100 penalty, and a scale of inspection fees is fixed by law. It is true the constitutionality of these laws has not been tested, but they show what range inspection laws have taken, and what is generally regarded as within their scope.

Now, the law in question is a general law of the state of Texas; it purports to be an inspection law, to encourage stock raising and to protect stock raisers; it makes each county of the state, except certain counties named, an inspector's district, for the inspection of hides and animals; and creates the office of inspector, to be elected by the voters of the county; it requires of him a bond and oath of office; it requires him to keep a book of records of his inspections; it requires him to examine and inspect all hides or animals known or reported to him as sold, or as leaving or going out of the county for sale or shipment; and all animals driven or sold in his district for slaughter to packeries or butcheries; it directs the method of inspecting, branding and recording animals and hides; it requires him to prevent the sale or removal out of the county of hides or animals upon which the brands can not be ascertained, unless identified by proof, etc.; it gives him power to seize and condemn unbranded animals or hides. Various other regulations are imposed in the act. By the sixteenth section, it is provided that any person may ship from any part of the state any hides or animals imported into the state from Mexico, and shall not be required to have the same inspected: provided, he has first obtained the certificate of the inspector or deputy inspector of the county into which the same were imported, certifying the date of the importation thereof, the name of the importer and of the owner, and of the person in charge of the same, the name of the place where the same were imported, together with the number of hides and animals so imported, and a description of their marks and brands (if any there be) by which the same may be identified. By the 17th section, it is declared that inspectors shall be allowed to charge and collect the same fees for the services which they are authorized to perform by the terms of section 16 as are allowed in other cases thereafter provided. The fees referred to are those allowed for inspection, which are, as before stated, from six to ten cents per hide, according to the number inspected.

Now, it is contended that the examination and certificate required by the 16th section, in order to be allowed to export out of the state hides imported from Mexico, is not an inspection, but is expressly denominated otherwise. "Shall not be required to have the same inspected," are the words, it is true. But the thing which is required, though not such an inspection as is usual and customary in other cases, is, nevertheless, an actual inspection. The exporter must obtain the certificate of the inspector, or his deputy, of the county into which the hides were imported, certifying (note what things are to be certified) the date of the importation, the name of the importer and of the owner, and of the person in charge, name of the place where imported, number of hides and animals imported, and description of their marks and brands, if any there be, by which they can be identified. What is this but inspection? The object is to subject the hides or animals to the examination of the official inspector, that he may note everything about them, serving to their identification, ownership, etc.

I do not say that such an inspection as this is necessary or expedient; but it is inspection; and at such a place as Brownsville, it may, for aught I know, be a necessary police regulation to prevent frauds and clandestine removal and exportation of property belonging to the people of Texas. The fee or duty exacted may be excessive; but if so, congress can regulate that. Our only concern with the case is to know whether the acts required by the state law, and performed by the defendant on and about the hides, are fairly characterized as inspection or not. If they are, that ends the case here. We think the law is an inspection law; that the part of it in question is not foreign to that character; and that the acts of the defendant for which the fees exacted by him were charged were fairly performed under said inspection law; and that the fees are valid charges, until they shall be altered by congress.

The bill is therefore dismissed with costs.