NEW MEXICO *ex rel.* E. J. McLEAN & COMPANY *v.* DENVER & RIO GRANDE RAILROAD COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 18. Argued March 14, 15, 1906.—Decided October 15, 1906.

The right to legislate in the Territories being conferred under constitutional authority, by Congress, the passage of a territorial law is the exertion of an authority exercised under the United States, and the validity of such authority is involved where the right of the legislature to pass an act is challenged; and, in such a case, if any sum or value is in dispute, an appeal lies to this court from the Supreme Court of a Territory under § 2 of the act of March 3, 1885, 23 Stat. 443, even though the sum or value be less than $5,000.

The right of a shipper to have his goods transported by a common carrier is a valuable right measurable in money, and an appeal involving such a right of which this court otherwise has jurisdiction under § 2 of the act of March 3, 1885, will not be dismissed because no sum or value is involved.

The provision in section 10, Article I, of the Constitution of the United States, that States shall not lay imposts and duties on imports and exports is not contravened by a state inspection law applicable only to goods shipped to other States, and not to goods directly shipped to foreign countries.

A State or Territory has the right to legislate for the safety and welfare of its people, which is not taken from it because of the exclusive right of Congress to regulate interstate commerce; and an inspection law affecting interstate commerce is not for that reason invalid unless it is in conflict with an act of Congress or an attempt to regulate interstate commerce. *Patapsco Guano Co.* v. *North Carolina Board of Agriculture,* 171 U. S. 345, followed.

The law of March 19, 1901, of the Territory of New Mexico, making it an offense for any railroad company to receive, for shipment beyond the limits of the Territory, hides, which had not been inspected as required by the law, is not unconstitutional as an unwarranted regulation of, or burden on, interstate commerce.

This court will take judicial notice of the fact that cattle run at large in the great stretches of country in the West, identified only as to ownership by brands, and of the necessity for, and use of, branding of such cattle, and will not strike down state or territorial legislation, essential for prevention of crime, requiring the inspection of hides to be shipped without the State, although the act does not require such inspection of hides not to be so shipped.

The exercise of the police power may and should have reference to the peculiar situation and needs of the community, and is not necessarily invalid because it may have the effect of levying a tax upon the property affected if its main purpose is to protect the people against fraud and wrong.

The law being otherwise valid, the amount of the inspection fee is not a judicial question; it rests with the legislature to fix the amount, and will only present a valid objection if so unreasonable and disproportionate to the services rendered as to attack the good faith of the law.

78 Pac. Rep. 74, affirmed.

THE facts are stated in the opinion.

*Mr. W. B. Childers,* with whom *Mr. T. B. Catron* was on the brief, for appellants:

Appellants agree with the Supreme Court of New Mexico

that all legislation upon the subject of hide inspection in New Mexico, and the organization and existence of the Cattle Sanitary Board, should be looked into and construed together with this enactment, so far as the same may appear to be *in pari materia*.

The statutes touching hide inspection directly or indirectly, are: Act of 1889, Comp. Laws, New Mexico, 1897, §§ 181–206, creating Cattle Sanitary Board, and see preamble creating it "for sanitary purposes only"; act of 1891, Comp. Stat., §§ 207–219, giving the board additional powers; act of 1893, Comp. Laws, §§ 220–225, concerning raising funds for the board, and providing in § 221, that it might fix a fee for inspection of hides under provisions of act: acts of 1899, Session Laws, ch. 44, p. 99, and ch. 53, p. 106, fixing fee of three cents; act of 1901, requiring inspection of hides to be exported and the tagging thereof, and fixing fee of ten cents; §§ 84, 85, Comp. Laws of 1897, requiring butchers to give bonds and keep records.

These laws prescribe no inspection except for slaughter-house hides and for a distinct purpose of detecting violations of § 84, of the Compiled Laws, which requires keeping hides for thirty days.

This is the construction of the New Mexico Supreme Court upon the laws in question; and it is conclusively fixed that hides, out of a slaughter-house or in a slaughter-house after thirty days' age, were under no disability as articles of commerce, except for the period of thirty days after the killing. *Expressio unius est exclusio alterius;* and the requirement to withhold hides from trafficking for thirty days, qualifies them for commerce and traffic after that time. Hides, therefore, are after thirty days' age free articles of commerce in New Mexico, with all power to inspect the same or to charge a fee thereon or to withhold the same from commerce, absolutely determined. While being free in every sense, the law of 1901, attacked herein, was passed, taxing their exportation.

The law of 1901, is not an inspection law within the mean-

ing of the exception found in Art. I, § 10, par. 2, of the Constitution of the United States, prohibiting States, without the consent of Congress, from laying any imposts or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws.

As to what is an inspection law, see *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 Wheat. 419; *Leisy* v. *Harden,* 135 U. S. 112; *Bowman* v. *Chicago Ry. Co.,* 125 U. S. 465.

The law of 1901, cannot be construed as an inspection law because the inspection might lead to prevention and detection of crime. That is not the legitimate purpose of an inspection law. *People* v. *Compagnie Generale Transatlantique,* 107 U. S. 61.

For other definitions of inspection see Burrill's and Bouvier's Law Dictionaries; *Christman* v. *Northrup,* 8 Cow. (N. Y.) 45; 16 Am. and Eng. Ency. of Law, 808; *Mugler* v. *Kansas,* 124 U. S. 623.

Does any general danger, any popular apprehension of danger, from the stealing of hides, appear in New Mexico? Clearly not, for there is no vigilant inspection law, for the tracing of hides intended for local commerce, local tanneries, or local manufacture. The exercise of police power, for the detection of crime, is only thought necessary when exportation, or commerce between the States is set in motion. A hide thirty days old is exempt from inspection when sold in the Territory; but, even though already inspected, it has to undergo another inspection when offered for export.

Exports cannot be taxed as such. See *Coe* v. *Errol,* 116 U. S. 525; *Turpin* v. *Burgess,* 117 U. S. 506; *Cornell* v. *Coyne,* 192 U. S. 426.

It is apparent that this ten cent tax is an unusual tax not levied upon all property in the same class, but levied only on that portion of the hides of New Mexico which are offered for exportation by a common carrier; and although the law does not say, on its face, that it is taxing these hides simply

because of their exportation, still it is apparent that that is the only purpose or reason for the taxation. It cannot be said that the object is to detect crime, when the legislature discriminates in favor of local commerce and shows no disposition to detect crime at the expense of local industry. *Turner* v. *Maryland*, 107 U. S. 36, is inapplicable, as in that case there was a benefit to the property on which the fee was charged.

As the law imposes a discriminating and special tax on the property of one class of citizens, as upon butchers, or hide dealers, or upon one kind of property, as upon hides, to protect the property of another class of citizens, as cattle-raisers, or another kind of property, as cattle, it is in violation of fundamental principles of government and natural right. It takes private property for private use without compensation. It deprives the despoiled citizen of the equal protection of the laws. 1 Tucker on Const., 77; *Loan Association* v. *Topeka*, 20 Wall. 665.

The statute is not a reasonable law, properly devised for preventing the evil at which it may be aimed, if it is aimed at any evil; and not so devised as to no more than effectuate that purpose. *Mugler* v. *Kansas*, 123 U. S. 623; *Lawton* v. *Steele*, 152 U. S. 137, and cases cited; *Lake Shore R. R. Co.* v. *Ohio*, 173 U. S. 300.

Even if the law is valid on its face, if the tax is enforcible in an unusual way on an honest and legitimate article of interstate commerce, it may be invalid, and under the allegations of the petition, admitted by the demurrer, the law is improperly enforced.

A statute may be void by reason of its operation, although valid on its face. *Virginia Coupon Cases*, 114 U. S. 295. And as to reasonableness of such laws, both in language and operation, see *Brimmer* v. *Rebman*, 138 U. S. 78; *In re Rebman*, 41 Fed. Rep. 867; *Walling* v. *Michigan*, 116 U. S. 446.

The law in charging a fee of ten cents per hide, for an inspection made as at the port of shipment, where hides must be assumed to be in existence in shipping quantities, or car-

load lots, imposes a charge which is apparently largely in excess of the cost of such inspection. *Am. Fertilizer Co.* v. *Board of Agriculture*, 43 Fed. Rep. 609; *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 345; *Neilson* v. *Garza*, 2 Woods, 287, distinguished.

The statute imposes the burden of inspection, and the payment of ten cents per hide, only upon hides offered to a common carrier for shipment to a market without the Territory, and is void therefore as a clear discrimination between hides to be retained and used in the Territory and hides to be shipped out. Hides may also be shipped out of the Territory by any other means of transportation than a common carrier. As to effect of such discrimination see *McCullough* v. *Maryland*, 4 Wheat. 316; *Voight* v. *Wright*, 141 U. S. 65.

This court has jurisdiction of the appeal without regard to the value in dispute, as an authority exercised under the United States is involved. Sec. 2, act of March 3, 1885, 23 Stat. 443; *Clayton* v. *Utah*, 132 U. S. 632; *Clough* v. *Curtis*, 134 U. S. 361; *United States* v. *Lynch*, 137 U. S. 286; *Railroad Co.* v. *Arizona*, 156 U. S. 350; *Linford* v. *Ellison*, 155 U. S. 503, distinguished.

Mr. *Charles A. Spiess* and Mr. *A. C. Campbell*, with whom Mr. *D. J. Leahey* was on the brief, for appellee:

This court has not jurisdiction of the appeal. The matter in dispute is less than $5,000, and an authority exercised under the United States is not involved. The statute, the validity whereof is attacked, is of New Mexico and not of the United States. *Snow* v. *United States*, 118 U. S. 346; *Balt. & Pot. R. R. Co.* v. *Hopkins*, 130 U. S. 210; *Lynch* v. *United States*, 137 U. S. 280; *Cameron* v. *United States*, 146 U. S. 533; *Seymour* v. *South Carolina*, 152 U. S. 353; *Linford* v. *Ellison*, 155 U. S. 503.

In order to sustain appellate jurisdiction of this court under either section of the act of Congress of March 3, 1885, the matter in dispute must have been money or something, the

value of which can be estimated in money. *Perrine* v. *Slack*, 164 U. S. 452; *Durham* v. *Seymour*, 161 U. S. 235; *Kurtz* v. *Moffitt*, 115 U. S. 487, 495; *Caffrey* v. *Oklahoma*, 177 U. S. 346; *De Kraft* v. *Barney*, 2 Black, 704; *In re Chapman*, 156 U. S. 211; *Cross* v. *Burke*, 146 U. S. 82; *In re Heath*, 144 U. S. 92; *Farnsworth* v. *Montana*, 129 U. S. 104; *Sinclair* v. *District of Columbia*, 192 U. S. 16; *Elgin* v. *Marshall*, 106 U. S. 578; *Bruce* v. *Railroad Co.*, 117 U. S. 514.

The matter in dispute in this case was not money, and the remaining inquiry is whether it is a right the value of which can be ascertained in money.

The collateral effect of the judgment cannot be inquired into in this inquiry for the purpose of determining whether this court has jurisdiction. The judgment itself must carry with it the elements, which confer jurisdiction. *Re Belt*, 159 U. S. 95, 100; *Railroad Co.* v. *District of Columbia*, 146 U. S. 227, 231; *Chapman* v. *United States*, 164 U. S. 436; *Farnsworth* v. *Montana*, 129 U. S. 104; *Cross* v. *Burke*, 146 U. S. 82.

This court in determining the validity of legislation is limited to question of power, and cannot pass on expediency. Congress gave the legislature of New Mexico power to pass this legislation as fully as a State would have it. Sec. 1851, Rev. Stat.; *Walker* v. *Southern Pacific R. R. Co.*, 165 U. S. 593.

The act was a valid inspection law, and that notwithstanding it operated on articles of interstate commerce. *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 345.

The law was passed to meet the peculiar conditions in New Mexico in regard to the vast herds of grazing cattle, which can only be identified and property rights therein protected by the system of branding in force in the Territory. The law falls under the class sustained in *Turner* v. *Maryland*, 107 U. S. 38. The law is an inspection law, and it operates on the hides before they begin to move in interstate commerce, and therefore is not an export tax. *Coe* v. *Errol*, 116 U. S. 517; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 82; *Kidd* v. *Pearson*, 128 U. S. 1; and see also *United States* v. *Boyer*, 85 Fed.

Rep. 425; *United States* v. *E. C. Knight Co.*, 156 U. S. 13; *Cornell* v. *Coyne*, 192 U. S. 418; *In re Greene*, 52 Fed. Rep. 113; see *People* v. *Bishop*, 94 N. Y. Supp. 74, sustaining New York veal law providing for tagging calves killed, with age and name of raiser and shipper.

The act is a legitimate exercise of the police power and is not dependent in any manner upon the exception contained in the article of the Constitution which provides that States may levy imposts for the execution of their inspection laws. The inspection fee is not levied upon interstate commerce.

Even if the hides in question should be considered interstate commerce at the time the law acts upon them, still the act is not in collision with the commerce clause of the Constitution and is valid, being a legitimate inspection law. See case below, 78 Pac. Rep. 75, and concurring separate opinion of Justice Pope, 79 Pac. Rep. 295; *City of New York* v. *Miln*, 11 Pet. 102; *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17.

The act answers all essential requirements of a valid inspection law, in that necessity existed for its enactment; it provides a reasonable fee; it intended and is well calculated to eradicate or at least lessen the evil of cattle stealing; it does no violence to the rights secured to the citizens of any other State or Territory; it operates upon property and not upon persons; it can be executed without taking testimony or evidence.

The legislature and courts of New Mexico must be presumed to be perfectly familiar with conditions there existing, and to understand the necessities in regard to legislation for protecting the property of its citizens. Whether such a law as the one now in question is necessary should be referred to the legislative department of the Territory. And the legislature having enacted it, this court will hesitate to deny its validity. *Clark* v. *Nash*, 198 U. S. 361.

The scope of inspection laws can no more be defined or limited than can the scope of police power of which it is a branch. *Barton* v. *Railroad Co.*, 32 Fed. Rep. 722; *Voight* v.

*Wright,* 141 U. S. 62; *Slaughter House Cases,* 16 Wall. 36, 62.. As to whether inspection laws can be resorted to for detection of crime see *Railroad Co. v. Husen,* 95 U. S. 465, 471.

The constitutional prohibition as to exports refers to foreign commerce and not to interstate commerce. *Woodruff* v. *Parham,* 8 Wall. 123, and the States may make inspection laws operating on interstate commerce. *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 345; *Neilson* v. *Garza,* 2 Woods, 287.

The fees charged in this case are reasonable, but that is a matter for the legislature to determine. Cases cited, *supra. Chester* v. *Telegraph Co.;* 154 Pa. St. 464; *West. Un. Tel. Co.* v. *New Hope,* 187 U. S. 425. See *Phœnix Meat Co.* v. *Moss,* 64 Pac. Rep. 442, as to Arizona hide inspection law.

The law does not discriminate between different classes of citizens. It acts upon hides, not persons, and upon hides whosesoever they may be. Whenever a law operates alike upon all persons and property similarly situated, equal protection is not denied. All that is required is that all persons subject to a law shall be treated alike. *Mo. Pac. R. R. y. Mackey,* 127 U. S. 205; *Duncan* v. *Missouri,* 152 U. S. 377; *Giozza* v. *Tiernan,* 148 U. S. 657.

In *Minnesota* v. *Barber,* 136 U. S. 313; *Brimmer* v. *Rebman,* 138 U. S. 78; *Voight* v. *Wright,* 141 U. S. 62, state laws were under consideration which discriminated against products of other States, and were for that reason condemned. In this case there is no such discrimination.

MR. JUSTICE DAY delivered the opinion of the court.

This is an appeal from the judgment of the Supreme Court of New Mexico, affirming the judgment of the District Court of Santa Fé County, sustaining a motion to quash an alternative writ of mandamus issued on the relation of E. J. McLean & Company against the Denver and Rio Grande Railroad Company.

From the allegations of the writ it appears that the relators, the appellants here, had delivered to the railroad company at Santa Fé, New Mexico, a bale of hides consigned to Denver, Colorado, a point on the line of the defendant's railroad. . The railroad company refused to receive and ship the hides for the reason that they did not bear the evidence of inspection required by the act of the legislature of New Mexico, approved March 19, 1901, which act, to be more fully noticed hereafter, made it an offense for any railroad company to receive hides for shipment beyond the limits of the Territory which had not been inspected within the requirements of the law.

An objection is made to the jurisdiction of this court upon the ground that the case is not appealable under the act of Congress of March 3, 1885.    23 Stat. 443.

Section 1 of the act provides, in substance, that no appeal or writ of error shall be allowed from any judgment or decree of the Supreme Court of a Territory unless the matter in dispute, exclusive of costs, exceeds the sum of $5,000.    Section 2 of the act makes exception to the application of section 1 as to the sum in dispute, in cases wherein is involved the validity of a treaty or statute of, or authority exercised under, the United States, and in all such cases an appeal or writ of error will lie without regard to the sum or value in dispute.

Confessedly, $5,000 is not involved; and in order to be appealable to this court the case must involve the validity of an authority exercised under the United States, and also be a controversy in which some sum or value is involved.    This court, in the case of *Lynch* v. *United States*, 137 U. S. 280, 285, laid down the test of the right to appeal under the statute in the following terms:

"The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry."

The right to legislate in the Territories is conferred, under

constitutional authority, by the Congress of the United States and the passage of a territorial law is the exertion of an authority exercised under the United States. While this act was passed in pursuance of the authority given by the United States to the territorial legislature, it is contended by the relators below, appellants here, that it violates the Constitution of the United States, and is therefore invalid, although it is an attempted exercise of power conferred by Congress upon the Territory. The objection of the relator to the law raises a controversy as to the right of the legislature to pass it under the broad power of legislation conferred by Congress upon the Territory. In other words, the validity of an authority exercised under the United States in the passage and enforcement of this law is directly challenged, and the case does involve the validity of an authority exercised under the power derived from the United States. It is not a case merely involving the construction of a legislative act of the Territory, as was the fact in *Snow* v. *United States*, 118 U. S. 346. The power to pass the act at all, in view of the requirements of the Constitution of the United States, is the subject-matter in controversy, and brings the case in this aspect within the second section of the act.

Is there any sum or value in dispute in this case? While the act does not prescribe the amount, some sum or value must be in dispute. *Albright* v. *Territory of New Mexico*, 200 U. S. 9. The matter in dispute is the right to have the goods which were tendered for shipment transported to their destination. As a common carrier, the railroad was bound to receive and transport the goods. Its refusal so to do was based upon the statute in question because of the non-inspection of the goods tendered. The relators claimed the right to have their goods transported because the statute was null and void, being an unconstitutional enactment. The controversy, therefore, relates to the right of the appellants to have their goods transported by the railroad company to the place of destination. We think this was a valuable right, measurable

in money. At common law, a cause of action arose from the refusal of a common carrier to transport goods duly tendered for carriage. Ordinarily, the measure of damages in such case is the difference between the value of the goods at the point of tender and their value at their proposed destination, less the cost of carriage. We are of the opinion that this controversy involves a money value within the meaning of the statute, and the motion to dismiss the appeal will be overruled.

Passing to the merits of the controversy, Congress has conferred legislative power upon the Territory to an extent not inconsistent with the Constitution and laws of the United States. Rev. Stat. § 1851. It is contended that the act under consideration contravenes that part of Article one, Section ten, of the Constitution of the United States, which reads: "No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." And also that part of the eighth section of Article one of the Constitution of the United States, which gives to Congress the power to regulate commerce with foreign nations, and among the States and with the Indian tribes.

As to the objection predicated on Section ten of Article one, that section can have no application to the present case, as that provision directly applies only to articles imported or exported to foreign countries. *Patapsco Guano Co.* v. *North Carolina Board of Agriculture*, 171 U. S. 345, 350, and cases cited. Moreover, that paragraph of the Constitution expressly reserves the right of the States to pass inspection laws, and if this law is of that character it does not run counter to this requirement of the Constitution.

The question principally argued is as to the effect of this law upon interstate commerce, and it is urged that it is in violation of the Constitution, because it undertakes to regulate interstate commerce and lays upon it a tax not within the power of the local legislature to exact. It has been too frequently decided by this court to require the restatement

of the decisions, that the exclusive power to regulate inter-
state commerce is vested by the Constitution in Congress, and
that other laws which undertake to regulate such commerce
or impose burdens upon it are invalid. This doctrine has
been reaffirmed and announced in cases decided as recently
as the last term of this court. *Houston & Texas Central R. R.
Co. v. Mayes,* 201 U. S. 321; *McNeill v. Southern Railway Co.,*
202 U. S. 543. While this is true, it is equally well settled
that a State or a Territory, for the same reasons, in the exer-
cise of the police power, may make rules and regulations not
conflicting with the legislation of Congress upon the same
subject, and not amounting to regulations of interstate com-
merce. It will only be necessary to refer to a few of the many
cases decided in this court holding valid enactments of legis-
latures having for their object the protection, welfare and
safety of the people, although such laws may have an effect
upon interstate commerce. *M., K. & T. R. R. Co. v. Haber,*
169 U. S. 613, 635; *Chicago, Milwaukee &c. R. R. Co. v. Solan,*
169 U. S. 133; *Pennsylvania R. R. Co. v. Hughes,* 191 U. S.
477. The principle decided in these cases is that a State or
Territory has the right to legislate for the safety and welfare
of its people, and that this right is not taken from it because
of the exclusive right of Congress to regulate interstate com-
merce, except in cases where the attempted exercise of author-
ity by the legislature is in conflict with an act of Congress,
or is an attempt to regulate interstate commerce. In *Patapsco
Guano Co. v. North Carolina Board of Agriculture,* 171 U. S.
345, it was directly recognized that the State might pass
inspection laws for the protection of its people against fraudu-
lent practices and for the suppression of frauds, although such
legislation had an effect upon interstate commerce. The same
principle was recognized in *Neilson v. Garza,* 2 Woods, 287, a
case decided by Mr. Justice Bradley on the circuit and quoted
from at length with approval by Mr. Chief Justice Fuller in
the *Patapsco case.*

Applying the principles recognized in these cases to the

case at bar, does the act in question do violence to the exclusive right of Congress to regulate interstate commerce? We take judicial notice of the fact that in the Territory of New Mexico, and in other similar parts of the West, cattle are required to be branded in order to identify their ownership, and that they run at large in great stretches of country with no other means of determining their separate ownership than by the brands or marks upon them. In view of these considerations, and for the purpose of protecting the owners of cattle against fraud and criminal seizures of their property, the Territory of New Mexico has made provision, by means of a system of laws enacted for the purpose, for the protection of the ownership of cattle and the prevention of fraudulent appropriations of this kind of property. The legislation upon the subject in the Territory is thus summarized in the opinion, in this case, of the Supreme Court of New Mexico, 78 Pac. Rep. 74:

"The first act relating to inspection of hides was passed in 1884, and provided that all butchers should keep a record of all animals slaughtered, and keep the hides and horns of such animals for thirty days after slaughter, free to the inspection of all persons (Compiled Laws, section 84), and provided a penalty for failure to keep the record and the hides and horns, (sect. 86,) and a penalty for refusal of inspection of the record or hides, (sect. 87). In 1891 all persons were required to keep hides for thirty days for the inspection of any sheriff, deputy sheriff, or any constable, or any board or inspector, or any officer authorized to inspect hides (sect. 89), and provided a penalty, (sect. 90). In 1889, amended in 1895, (p. 70, c. 29, § 4), a cattle sanitary board was created, (sect. 183,) with power to adopt and enforce quarantine regulations and regulations for the inspection of cattle for sale and slaughter, (sect. 184,) and pay to inspectors not to exceed $2.50 per day and their expenses, (sect. 190). In 1891, the cattle sanitary board was authorized and required to make regulations concerning inspection of cattle for shipment, and hides and slaughter-houses, (sect. 208,) and there was pro-

vided the details of arrangement for the inspection of cattle,
(sect. 212), and the duties of cattle inspectors were enlarged
by providing: 'Every slaughter-house in this Territory shall
be carefully inspected by some one of the inspectors afore-
said, and all hides found in such slaughter-houses shall be
carefully compared with the records of such slaughter-houses,
and a report in writing setting forth the number of cattle
killed at any such slaughter-house since the last inspection,
the names of the persons from whom each of said cattle was
bought, the brands and marks upon each hide, and any in-
formation that may be obtained touching the violation by
the owner of any such slaughter-houses, or any other person,
of the provisions of an act entitled, An act for the protection
of stock, and for other purposes, approved April 1, 1884.
For the purpose of making the inspection authorized by this
act, any inspector employed by the said sanitary board shall
have the right to enter, in the day or night time, any slaugh-
ter-house or other place where cattle are killed in this Ter-
ritory, and to carefully examine the same, and all books
and records required by law to be kept therein, and to com-
pare the hides found therein with such records,' (sect. 213).
In 1893, it was provided that the cattle sanitary board might
fix fees for the inspection of cattle and hides, (sect. 221, re-
pealed in 1889,) and that such fees shall be paid to the sec-
retary of the board and placed to the credit of the cattle
sanitary board, (sect. 222,) and shall be used, together with
funds realized from taxes levied and assessed, or to be levied
and assessed, upon cattle only, to defray the expenses of the
board, (sect. 220). Chapter 44 of the Laws of 1889 makes no
changes in the law material to the consideration of this case.
Chapter 53 of the Laws of 1889 provides a fee of three cents
for the inspection of cattle."

In *pari materia* with this legislation the act of 1901, now
under consideration, was passed. Sections three and four of
that act are as follows:

"Sec. 3. Hereafter it shall be unlawful for any person, firm

or corporation to offer, or any railroad company or other common carrier to receive, for the purpose of shipment or transportation beyond the limits of this Territory, any hides that have not been inspected and tagged by a duly authorized inspector of the cattle sanitary board of New Mexico, for the district in which such hides originate. For each hide thus inspected there shall be paid by the owner or holder thereof a fee or charge of ten cents, and such fee or charge shall be a lien upon the hides thus inspected, until the same shall have been paid. Each inspector of hides shall keep a complete record of all inspections made by him, and shall at once forward to the secretary of the cattle sanitary board, on blanks furnished him for that purpose, a complete report of each inspection, giving the names of the purchaser and shipper of the hides, as well as all the brands thereon, which said report shall be preserved by the secretary as a part of the records of his office.

"SEC. 4. Any person, firm or corporation, common carrier, railroad company or agent thereof, violating any provision of this act, or refusing to permit the inspection of any hides as herein provided, shall, upon conviction thereof, be deemed guilty of a misdemeanor, and shall be fined in any sum not exceeding one thousand dollars for each and every violation of the provisions of this act."

The purpose of these provisions is apparent, and it is to prevent the criminal or fraudulent appropriation of cattle by requiring the inspection of hides and registration by a record which preserves the name of the shipper and purchaser of the hides, as well as the brands thereon, and by which is afforded some evidence, at least, tending to identify the ownership of the cattle. It is evident that the provision as to the shipment of the hides beyond the limits of the Territory is essential to this purpose, for if the hides can be surreptitiously or criminally obtained and shipped beyond such limits, without inspection or registration, a very convenient door is open to the perpetration of fraud and the prevention of discovery.

It is argued that this act lays a special burden upon interstate commerce, because under the law hides not offered for transportation are not required to be inspected after thirty days in slaughter-houses and not at all outside of slaughter-houses. But legislation is not void because it meets the exigencies of a particular situation. Other statutory provisions apply to property remaining in the Territory where possibly it may be found and identified. When shipped beyond the limits of the Territory the means of reaching it are beyond local control, and it is the purpose of sections 3 and 4 of the act of 1901, to preserve within the Territory a record of the brands identifying the property and naming the purchaser or shipper. Certainly we cannot judicially say that there can be no valid reason for making the inspection in question apply only to hides offered for transportation beyond the Territory, and that for that reason the tax is an arbitrary discrimination against interstate traffic.

It is urged further that this is a mere revenue law and in no just sense an inspection law, and, therefore, not within the police power conferred upon the Territory. It is true that inspection laws ordinarily have for their object the improvement of quality and to protect the community against fraud and imposition in the character of the article received for sale or to be exported, but in the *Patapsco case, supra,* it was directly recognized that inspection laws such as the one under consideration might be passed in the exercise of the police power, and such was the view of Mr. Justice Bradley in *Neilson* v. *Garza, supra,* decided on the circuit. We see no reason why an inspection law which has for its purpose the protection of the community against fraud and the promotion of the welfare of the people cannot be passed in the exercise of the police power, when the legislation tends to subserve the purpose in view. In the Territory of New Mexico, and other parts of the country similarly situated, it is highly essential to protect large numbers of people against criminal aggression upon this class of property. The exercise of the police power

may and should have reference to the peculiar situation and needs of the community. The law under consideration, designed to prevent the clandestine removal of property in which a large number of the people of the Territory are interested, seems to us an obviously rightful exercise of this power. It is true it affects interstate commerce, but we do not think such was its primary purpose, and while it may have an effect to levy a tax upon this class of property, the main purpose evidently was to protect the people against fraud and wrong.

It is further urged that this law is invalid because it imposes an unreasonable fee for the inspection, which goes into the treasury of the sanitary board, and the allegations of the writ tend to show that an inspector might make a considerable sum in excess of day's wages in the work of inspecting hides under the provisions of this act. The law being otherwise valid, the amount of the inspection fee is not a judicial question; it rests with the legislature to fix the amount, and it can only present a valid objection when it is shown that it is so unreasonable and disproportionate to the services rendered as to attack the good faith of the law. *Patapsco Guano Co.* v. *North Carolina Board of Agriculture,* 171 U. S. 345.

We are of the opinion that the allegations of the relator as to the cost of inspection, compared with the fees authorized to be charged, and the profit which might accrue to the inspector, in view of other and necessary incidental expense connected with the inspection and registration, do not bring the case within that class which holds that under the guise of inspection other and different purposes are to be subserved, thus rendering the legislation invalid.

Upon the whole case, we are of the opinion that, in the absence of Congressional legislation covering the subject, and making a different provision, the act in controversy is a valid exercise of the police power of the Territory, and not in violation of the Constitution giving exclusive power to Congress in the regulation of interstate commerce.

*Affirmed.*