## BECK v. PATTERSON, Governor of Oregon, et al.

District Court, D. Oregon. June 27, 1927.

No. 8912.

Eminent domain ⬤�longdash⟩2(1)—Oregon Stock Inspection Law held beyond power of Legislature and void, as taking citizen's property and giving it to another (Or. L. §§ 9172, 9175, as amended by Laws 1927, pp. 426, 427).

Or. L. § 9175, as amended by Laws 1927, p. 426, provides that on request of the Cattle & Horse Raisers' Association of Oregon, a voluntary association of private individuals interested in the business of raising and dealing in cattle and horses, the Governor shall appoint an inspector for any stockyard in the state, his compensation to be agreed on and paid by the association. Or. L. § 9172, as amended by Laws 1927, p. 427, provides for a stated fee per head for all cattle and horses inspected, to be paid by the owner to the inspector and by him paid over to the association, which is required to pay 5 per cent. of the same to the state, and all expenses of inspection, and may retain the excess, which, as appears, if the law is carried out as intended, will amount to some $70,000 per year. Held, that such enactments constitute arbitrary decrees for taking property of one citizen and giving it to others, and are beyond the power of the state and void.

In Equity. Suit by L. G. Beck against Isaac Lee Patterson, as Governor and Isaac H. Van Winkle, as Attorney General of the

State of Oregon, and Gerry C. Snow, heretofore appointed State Brand Inspector. On motion for preliminary injunction. Injunction granted.

Gustav Anderson, of Baker, Or., and P. J. Gallagher, of Portland, Or., for plaintiff.

I. H. Van Winkle and Willis S. Moore, both of Salem, Or., for defendants.

Before GILBERT, Circuit Judge, and BEAN and McNARY, District Judges.

BEAN, District Judge. This is a suit to enjoin the enforcement of an act of the Oregon Legislature providing for the appointment of stock inspectors, the fees to be paid by the owners of stock inspected, and the disposition of the funds to be derived therefrom. It was submitted on application for preliminary injunction. By section 9175 of the Oregon Laws, as amended in 1927 (chapter 329, Laws of 1927), it is provided that the Governor shall, upon the request of the Cattle & Horse Raisers' Association of Oregon, appoint a stock inspector or inspectors for any stock yard or yards in the state, for the purpose of inspecting all cattle and horses coming to said yards, the compensation of such inspector or inspectors to be agreed upon and paid by the Cattle & Horse Raisers' Association. By section 9172, as amended in 1927 (chapter 330, Laws of 1927), a charge of 10 cents per head on all cattle and horses weighing 400 pounds or more, and 5 cents for all weighing less than 400 pounds, is paid by the owner or person in charge of the stock inspected to the inspectors, and by them paid over to the Cattle & Horse Raisers' Association, it to pay all costs and expenses of all brand inspections provided by law, first, however, paying in to the state treasurer 5 per cent. of the fees so collected.

It appears from the complaint that the Cattle & Horse Raisers' Association is a voluntary association of an uncertain number of private individuals, engaged or interested in the business of raising and dealing in cattle and horses; that, if the various inspectors are permitted to collect the fees provided by law, they will amount in the aggregate to approximately $75,000 annually, while the costs and expenses of inspection will not exceed $4,000, and the surplus is intended to be used by the association in publishing and distributing information to its various members relating to the market-ing of live stock and the payment of expenses incident thereto.

The state has a right to legislate for the safety and welfare of its citizens, and therefore may, for the purpose of preventing fraud and crime, enact and enforce reasonable inspection and quarantine laws, so long as they do not conflict with some act of Congress or attempt to regulate interstate commerce. New Mexico ex rel. McLean v. Denver & Rio Grande R. R. Co., 203 U. S. 38, 27 S. Ct. 1, 51 L. Ed. 78. But the question here presented is whether the state may, under the guise of an inspection law, lawfully exact a fee to be paid by the owners of stock inspected for the benefit of an association of individuals, not a public agency or controlled or managed by the state.

We think not. It is a fundamental principal of our government that no man shall be involuntarily deprived of his property, except for a public purpose, and therefore a legislative act which takes or undertakes to authorize the taking of one person's property for the benefit of another is not a law, but an arbitrary decree whereby the property of one citizen may be transferred to another, and is beyond the power of the Legislature. Dodge v. Mission Tp. (C. C. A.) 107 F. 829, 54 L. R. A. 242. As said by Judge Miller, in Loan Ass'n v. Topeka, 20 Wall. 655, 22 L. Ed. 455: "To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it upon favorite individuals, to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law."

Now, under the law in question the inspectors are to be appointed only when requested by an association of an uncertain number of private individuals, and for such yard or yards as it may determine. The compensation of inspectors is to be fixed by the association, and it is to receive and apply to its own use the funds received from inspection fees, less the 5 per cent. to be paid to the state, and such an amount as it sees proper to pay inspectors, which surplus fund, it is alleged in the complaint, will exceed $70,000 a year. This is but an attempt, under legislative form, to take the property of one citizen and transfer it to the use and benefit of another. This the Legislature has no power to do.

The injunction will issue.