4

DONALD DALTON, PRO AMI *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

DOROTHY DALTON *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

EDWARD DALTON *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

EDWARD DALTON *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

EDWARD DALTON *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

FRANK DALTON, PRO AMI *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

WILLIAM DALTON *vs.* OLIVE M. McLEAN,
ADM'X OF THE ESTATE OF ARNOLD T. McLEAN.

Aroostook.　　　Opinion, June 29, 1940.

*Fellows & Fellows,* for plaintiffs.
*James E. Mitchell,* for defendant.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

THAXTER, J.    There are involved here seven different actions. They are before us on report on an agreed statement of facts. On August 17, 1937, Arnold T. McLean, a resident of Aroostook County in the State of Maine, was driving an automobile in Newcastle in the Province of New Brunswick. A collision took place with another automobile in which four of the plaintiffs were riding. The plaintiffs are all residents of New Brunswick. McLean was injured and died the next day. The defendant was appointed administratrix of his estate by the Probate Court in Aroostook County. On December 7, 1938, within twelve months after the qualification of the defendant as administratrix proofs of claim were filed against McLean's estate by these plaintiffs in which damages were claimed because of McLean's alleged negligence. These actions were commenced against the administratrix within twenty months after her qualification. It is agreed that at the time of the accident and when McLean died there was no law of New Brunswick providing for the survival of such actions as these and that they did not survive and no suits could then have been maintained in said province. The sole question before us is whether the actions can be maintained in this state. Under the stipulation it is agreed that if the actions are not maintainable judgment shall be entered for the defendant in each case; if they can be maintained there shall be judgment for the plaintiffs and the cases shall be remanded for a hearing in damages.

At common law such actions as these did not survive. See *Hooper* v. *Inhabitants of Gorham,* 45 Me., 209, 213. But this rule has now

been changed by statute in this state. R. S. 1930, Chap. 101, Sec. 8.

The doctrine is now well settled that whether a claim for damages for a tort survives the death of the tort-feasor is determined by the law of the place of wrong. Restatement, Conflict of Laws (1934) Sec. 390; *Ormsby* v. *Chase*, 290 U. S., 387, 54 S. Ct., 211; *Needham* v. *Grand Trunk Railroad*, 38 Vt., 294; *Orr* v. *Ahern*, 107 Conn., 174, 139 A., 691; *Kertson* v. *Johnson*, 185 Minn., 591, 242 N. W., 329; *Friedman* v. *Greenberg*, 110 N. J. L., 462, 166 A., 119. For cases supporting an analogous doctrine see *Winslow* v. *Tibbetts*, 131 Me., 318, 162 A., 785; *Pringle* v. *Gibson*, 135 Me., 297, 195 A., 695.

Plaintiffs' counsel do not seriously contend that the law is otherwise, but base their right to recover on a statute enacted by the Legislative Assembly of the Province of New Brunswick on April 6, 1939. This act provides for the survival of actions such as those now before us. Section 4 reads as follows:

"4. No proceedings shall be maintainable in the Courts of the Province in respect of a cause of action which by virtue of this Act has survived against the estate of a deceased person, unless either, —
(a) proceedings against him in respect of that cause of action were pending at the date of his death; or
(b) the cause of action arose not earlier than six months before his death and proceedings are taken in respect thereof not later than six months after his personal representative took out representation."

It should be noted that the present actions were not brought within the limitation of time imposed by this section, but section 8 of the act makes this limitation inapplicable to proceedings "commenced at any time up to the first day of October, 1939," and these actions, commenced July 11, 1939, are within this exception.

Section 10 which the plaintiffs claim is applicable to the suits before us reads as follows:

"10. This Act shall be deemed to have had effect as from the first day of July, 1937, but no proceedings shall be maintainable in any Court in the Province in respect of any cause of

action which arose before the first day of January, 1939, unless the consent of a Judge of the Supreme Court to the bringing of such proceedings be first had and obtained."

No action was instituted by any of these plaintiffs in the courts of New Brunswick, but they claim that the courts of this state must recognize the retroactive provision of this section and treat the statute as if it had been in force from July 1, 1937.

They suggest that the retroactive feature is valid and must be recognized by this court because the New Brunswick act did not create a new cause of action but merely provided "a new remedy to enforce a former liability — plainly existent and justly due." There is weighty authority, however, to the effect that such a statute as this does create a new cause of action. In *Davis* v. *New York & New England Railroad Co.*, 143 Mass., 301, page 305, 9 N. E., 815, page 819, the court in discussing the effect of a statute providing for the survival of an action in favor of an estate said: "While the action for personal injury is spoken of as surviving, as there previously was no responsibility to the estate, the statute creates a new cause of action. It imposes a new liability, and does not merely remove a bar to a remedy such as is interposed by the statute of limitations, which, if withdrawn by the repeal of the statute, would allow an action to be maintained for the original cause."

But regardless of the merits of this question there is a more fundamental reason why these plaintiffs cannot maintain their actions.

The recognition and enforcement by one sovereignty of the laws of another is not a matter of absolute right but rests on comity. "It is devised altogether from the voluntary consent of the latter, and is inadmissible, when it is contrary to its known policy or prejudicial to its interests." Story, Conflict of Laws (7th ed. 1872) 32. And the same author says further, page 33: "In regard to the question, how far one country will afford redress for the violation of contracts, or the commission of torts, or any other duty committed in a foreign forum, it must, in the first instance, be mere matter of discretion with the nation where such redress is sought; ... "

The rule is nowhere better stated than in *Saul* v. *His Creditors*, 5 Mart. (N. S.), 569, cited by Story and other text-writers. Porter,

J., referring to the discussions of old writers says, page 596: "They seem to have forgotten, that they wrote on a question which touched the comity of nations, and that that comity is, and ever must be, uncertain. That it must necessarily depend on a variety of circumstances, which can not be reduced within any certain rule. That no nation will suffer the laws of another to interfere with her own, to the injury of her citizens: that whether they do or not, must depend on the conditions of the country in which the foreign law is sought to be enforced — the particular nature of her legislation — her policy — and the character of her institutions. That in the conflict of laws, it must often be a matter of doubt which should prevail, and that whenever that doubt does exist, the court which decides, will prefer the law of its own country, to that of the stranger."

Conceding that it is ordinarily our duty to enforce a right validly created by the law of New Brunswick, yet such action is not obligatory, if such enforcement is contrary to our public policy or imposes an unjust burden on the citizens of our state. *Pringle* v. *Gibson*, supra; *Long* v. *Hammond*, 40 Me., 204; *Hilton* v. *Guyot*, 159 U. S., 113, 16 S. Ct., 139; *Loucks* v. *Standard Oil Company of New York*, 224 N. Y., 99, 120 N. E., 198; *Brown* v. *Perry*, 104 Vt., 66, 156 A., 910.

In the light of this discussion let us consider the New Brunswick statute. In so far as it provides for the survival of actions such as these there is no possible ground for a refusal by the courts of the State of Maine to enforce it, particularly since the policy which it adopts is in accord with our own. The difficulty comes with the retroactive provision of the law.

At the time of the death of defendant's intestate on August 18, 1937, no valid claim growing out of the accident could have been asserted against his estate by any one of these plaintiffs. This was also true when the claims were filed on December 7, 1938. It was the duty of the administratrix of his estate at that time, if properly advised as to the law, to treat those claims as invalid and unenforceable. Could a statute of New Brunswick subsequently passed create a liability against the estate of a decedent which did not exist either at the time of death, or when the administratrix was appointed, or when the purported claim was filed? Under such circumstances as this must the administration of an estate here be held open on the

possibility that the foreign sovereignty may pass such an act as is here before us? Unless from the terms of a statute it is clear that the legislature intended it to be retroactive, it is not the policy of our law to treat it so. *Miller* v. *Fallon*, 134 Me., 145, 183 A., 416. And a retroactive provision is valid only when it relates to a remedy and not to a substantive right. *Miller* v. *Fallon*, supra, 147 ; *Coffin* v. *Rich*, 45 Me., 507. Must we under the doctrine of comity give effect to a retroactive provision of a foreign statute when to do so would seriously interfere with the orderly settlement of an estate being administered in one of our own probate courts? It is clear that the Legislative Assembly of New Brunswick recognized that the enforcement of the retroactive feature of the act might work hardship, for it is provided that under it proceedings cannot be maintained in respect of any cause of action in the Province which arose prior to January 1, 1939, without first obtaining the consent of a judge of the Supreme Court. Obviously, this is a provision inapplicable if suit is brought in Maine, and the result is that one of our own citizens sued here is denied a safeguard which the statute gives to a citizen of New Brunswick sued in a court of the Province.

A decision of Lord Penzance indicates that the principle contended for by these plaintiffs would not be sustained by the English courts. *Lynch* v. *The Provincial Government of Paraguay*, L. R. 2, P. & D. 268. A resident of Paraguay died leaving personal property in England. After his death the Government of Paraguay by decree provided that the property of the deceased should become the property of Paraguay. Under this decree Paraguay claimed the property of the deceased in England. The court conceded that the succession to personal property in England of a person dying domiciled abroad was governed exclusively by the law of the domicile. Refusing, however, to recognize the retroactive feature of the Paraguay law, the court held that the law as it existed at the time of death controlled. The reasoning of the court is applicable to the case before us. It said, pages 271-272: "But it was ingeniously argued that the decree in question has by the law of Paraguay a retrospective operation, and that, though the decree was, in fact, made since the death, it has by the law of Paraguay become part of that law at the time of the death. In illustration of this view it was suggested, that if the question were to arise in a court of Paraguay such court

would be bound by the decree, and therefore bound to declare the provisions of the decree to be effective at and from the time of the death. This may be so; but the question is, whether the English courts are bound in like manner; or, more properly speaking, the question is, in what sense does the English law adopt the law of the domicile? Does it adopt the law of the domicile as it stands at the time of the death, or does it undertake to adopt and give effect to all retrospective changes that the legislative authority of the foreign country may make in that law? No authority has been cited for this latter proposition, and in principle it appears both inconvenient and unjust. Inconvenient, for letters of administration or probate might be granted in this country which this court might afterwards be called upon, in conformity with the change of law in the foreign country, to revoke. Unjust, for those entitled to the succession might, before any change, have acted directly or indirectly upon the existing state of things, and find their interests seriously compromised by the altered law."

For the reasons heretofore given we hold that under the principle of comity the courts of Maine are not obliged to give effect to the retroactive feature of the New Brunswick statute. Since these claims except for such provision did not survive by the law of New Brunswick where the causes of action arose, the entry in each case must be,

*Judgment for the defendant.*