**BLACK HILLS PACKING COM-PANY, etc.**

v.

**S. D. STOCKGROWERS ASSOCI-ATION, etc., et al.**

Civ. No. 74-5034.

United States District Court, D. South Dakota.

July 7, 1975.

---

David F. Sieler, Rapid City, S. D., for plaintiffs.

William G. Porter, Rapid City, S. D., for S. D. Stockgrowers.

William J. Janklow, Atty. Gen., State of South Dakota, Pierre, S. D., for State of South Dakota.

## MEMORANDUM OPINION

BOGUE, District Judge:

The above-captioned case was tried to the Court on December 10 and 11, 1974, in Rapid City, South Dakota. The plaintiff, Black Hills Packing Company, a South Dakota corporation, brought this action against the various defendants, alleging that various defendants had violated the plaintiff's constitutional rights as prohibited by 42 U.S.C. § 1982. The jurisdiction of this Court is based upon 28 U.S.C. § 1343(3).

The plaintiff operates a packing plant facility which is located in Rapid City, South Dakota, and within an area which has been designated by certain South Dakota statutes as a "brand inspection area." S.D.C.L. § 40–21–1. More than 50 per cent of the livestock slaughtered and processed by the plaintiff corporation is purchased outside of the state of South Dakota and transported to the plaintiff's packing plant in Rapid City. The gist of the plaintiff's complaint is the fact that the cattle brought into the plaintiff's facilities from surrounding states are brand inspected at plaintiff's facilities, even though they may have received prior brand inspections in their state of origin. The plaintiff in the present lawsuit did not contest defendant's right to inspect cattle purchased within the state of South Dakota, which are also brand inspected at the plaintiff's facilities. The plaintiff basically contends that the out-of-state livestock delivered to the plaintiff's Rapid City packing plant are being subjected to a double inspection, that is, the first being at the time ownership of the livestock is transferred to plaintiff outside of the state of South Dakota, and the second being when the livestock arrives at the Rapid City plant immediately prior to slaughter. The plaintiff contends that this double inspection violates certain of its civil rights, that is (1) that it violates due process of law; (2) that it denies full faith and credit to the certificates of inspection conducted by other states; (3) defendant's act of inspection impairs interstate commerce; (4) that the South Dakota statute limiting the brand inspection area to only a portion of South Dakota, denies the plaintiff equal protection of the law; and (5) that the statutes defendant seeks to enforce, invade an area already preempted by the United States of America. This basic framework of facts sets the stage for a legal discussion of the issues involved.

### I.

The plaintiff's first legal argument is that it is being denied due process of law in two distinct ways. Its first contention is that the South Dakota Stockgrowers Association has no power or authority to act, in that the State Brand Board has never properly delegated to the Stockgrowers Association the power or authority to make brand inspections over packing plant facilities in the state

of South Dakota. The plaintiff argues that having no power or authority to act, the collection of brand inspection fees by the Stockgrowers Association is a taking of property forbidden by the due process clause of the United States Constitution. The plaintiff draws this Court's attention to South Dakota Compiled Laws § 40–21–19, and argues that this statute expressly limits the activities which the Brand Board may delegate. The plaintiff further argues that regulation and inspection of packing plant facilities are not contained within this statute as being a power which the Board may delegate.

■ This Court believes that the plaintiff has misconstrued the applicable statutes which allow the Brand Board to delegate certain of its powers to the South Dakota Stockgrowers Association. South Dakota Compiled Laws § 40–18–10 provides that the State Brand Board shall have the authority to delegate an agency for carrying on of livestock ownership inspection work. S.D.C.L. § 40–18–9 also provides that the State Brand Board shall have the authority to employ persons or corporations to carry out the provisions of chapters 40–20 and 40–21 of the South Dakota Compiled Laws. This Court believes that the legislative enactment of S.D.C.L. § 40–18–10 fully empowered the State Brand Board to delegate its brand inspection functions to an agency such as the South Dakota Stockgrowers Association. Furthermore, S.D.C.L. § 40–20–29 specifically provides that it shall be unlawful for any packer to slaughter any cattle until these cattle have had an ownership inspection by the State Brand Board or one of its authorized agents. Thus, it would appear to this Court upon reading all of the applicable statutes together, that it is well within the power of the South Dakota Brand Board to delegate its livestock inspection functions to the South Dakota Stockgrowers Association.

The plaintiff's second "due process" argument is founded upon the contention that the state is not exercising its livestock inspection powers in a constitutional manner, in that the cattle involved have been previously inspected by a state other than South Dakota. The plaintiff would seem to be arguing here that no legitimate police power function is being served by the inspection of cattle which had been previously inspected by another state. Thus, the plaintiff argues that there is no legitimate public interest in reinspecting cattle which have been inspected in a state other than South Dakota, and transferred across state lines to the plaintiff's packing facility in Rapid City, South Dakota.

■ The United States Supreme Court has, of course, time and time again stated the basic standard for determining whether a state statute is a valid exercise of its inherent police power. In the case of *Cusack v. Chicago*, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917), the Supreme Court stated:

> "[W]hile this Court has refrained from any attempt to define with precision the limits of the police power, yet its disposition is to favor the validity of laws relating to matters completely within the territory of the state enacting them, and it so reluctantly disagrees with the local legislative authority, primarily the judge of the public welfare, especially when its action is approved by the highest court of the state whose people are directly concerned, that it will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare."

The fundamental basis of course for the legislature passing livestock inspection laws is to set up a system where ownership can readily be determined, and thus hopefully assisting in the prevention and detection of theft of livestock, especially in areas where there is still a considerable amount of open range. It can hardly be argued that this basic function and purpose would be outside the police powers of the state of South Dakota. How-

ever, counsel for the plaintiff would argue that since these cattle are brought from outside the state of South Dakota, the inspection in question is not affording any protection to the citizens of South Dakota, but rather to out-of-state ranchers and producers. It is difficult for this Court to conceive how a determination would be made as to the ownership of cattle in question without an inspection. Evidence at the trial displayed that on several occasions when inspections were undertaken at plaintiff's facilities, cattle which were subject to South Dakota brand laws were discovered intermingled with cattle that had been transported from other states. Thus, in such a situation it is difficult to determine how this fact would have been uncovered had there not been an actual inspection of the cattle that were transported to the plaintiff's plant from outside the state of South Dakota. If the basis of the inspection laws is in fact to protect South Dakota ranchers from the theft of their cattle, the only method of doing so is by inspecting all cattle which move to the plaintiff's facility. The mere fact that some of the cattle may have received an ownership inspection in a foreign state before their shipment to the plaintiff's facility in no way moves this Court to the conclusion that a valid exercise of the state's police power is not present.

## II.

■ The plaintiff's second contention is that the reinspection in South Dakota of cattle which were originally inspected in a sister state, denies the sister state's inspection full faith and credit as guaranteed by the United States Constitution. The United States Constitution, Article IV, § 1, guarantees that:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

To the present date almost all of the cases concerning the full faith and credit clause have involved the effect of this clause upon the force which must be given to judgments of another state, in an independent judicial action in the foreign state. The Supreme Court, however, has recognized that a state statute is a "public act" within the meaning of Article IV, § 1, of the United States Constitution. *See, Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955). The fact that a sister state's statutes are considered public acts under the full faith and credit clause does not, however, require the enforcement of every right conferred by a statute of another state, nor insure unlimited extraterritorial recognition of all statutes or of any statute under all circumstances. *Broderick v. Rosner,* 294 U.S. 629, 55 S. Ct. 589, 79 L.Ed. 1100 (1935); *Bradford Electric Light Co. v. Clapper,* 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932).

The first fundamental question that the Court must ascertain is whether a right has been conferred upon the plaintiff by a statute of another state, which is not being given full faith and credit by the state of South Dakota. It would seem that here the plaintiff is arguing that when a foreign state makes a brand inspection of cattle which have been sold to the plaintiff by a rancher or an organization within its state, that this inspection proves up the plaintiff's ownership, and that by having the cattle inspected pursuant to the South Dakota brand laws the plaintiff is being denied the full faith and credit of the foreign state's acknowledgement of the plaintiff's ownership. This Court believes that the plaintiff's argument must fail for several reasons.

■■ It is a basic principle that no legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed. *Sandberg v. McDonald,* 248 U.S. 185, 39 S.Ct. 84, 63 L.Ed. 200 (1918). The legislatures of the states outside of South Dakota from

which the plaintiff receives brand inspection certificates, in this Court's opinion, were not concerned with providing the plaintiff with an indicia of ownership, but rather were concerned with the protection of owners of livestocks in their states from having their cattle stolen and removed to another state for slaughter or resale. All of the states in which the plaintiff buys cattle require that the seller of those cattle prove his ownership prior to sale, whether the sale be to another individual in that state or to an individual who intends to transport the cattle outside of that state. This legislative intent is further exemplified by the fact that many of the brand inspection certificates from states other than South Dakota expressly indicate on the bottom of their certificate, that the brand inspection "does not exempt the person to whom it is issued from subsequent brand inspection and payment of fees for same at points where inspection is required by state laws." Thus, this Court cannot conclude that states outside of South Dakota have conferred a right upon the plaintiff which the state of South Dakota must give full faith and credit.

■ Even if this Court were to find that prior foreign state inspections of cattle gave the state of South Dakota constructive notice of the plaintiff's ownership of the cattle, its full faith and credit argument must still fail. It is a well-recognized principle that if the state of South Dakota has a governmental interest which outweighs the governmental interests of the foreign state for whose statute recognition is sought, the refusal of the forum state to give effect to the rights under the foreign statute do not constitute a denial of full faith and credit to that statute. *Alaska Packers Association v. Industrial Accident Commission*, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). The foreign states involved have no governmental interest whatsoever in determining, or assuring themselves, that cattle being slaughtered at the plaintiff's packing plant are properly owned. Likewise, it

is difficult for this Court to ascertain how a brand inspector at the plaintiff's packing plant would be able to determine whether the cattle being slaughtered were the same that had received a prior foreign state brand inspection, without making an actual physical inspection of the animal. Were the South Dakota brand inspector only allowed to examine the foreign state's brand certificate without physically comparing that certificate to the cattle being processed for slaughter, it would be possible to substitute South Dakota cattle in the foreign cattle's place. This Court does not infer that the plaintiff would undertake such conduct, only that the state of South Dakota has a legitimate governmental purpose in ascertaining whether or not stolen cattle are being slaughtered.

■ The plaintiff in his argument of law urges this Court to apply the ancient doctrine of comity to the controversy in the present case. Of course it is obvious that the state of South Dakota could give comity to a prior brand inspection of a foreign state, however, as the plaintiff recognizes in his brief, the doctrine of comity cannot be claimed as a right, but only as a favor or courtesy. *Dalton v. McLean*, 137 Me. 4, 14 A. 2d 13 (1940). The plaintiff has not cited to this Court any case law wherein a court of federal jurisdiction has ever held that a state is required under the doctrine of comity to give effect to any foreign state's laws where there was no infringement of any constitutional right. Whether comity should be given to a foreign state's laws is entirely within the discretion of the South Dakota courts.

### III.

The plaintiff's next argument is that South Dakota's inspection of cattle transported in from a foreign state is an infringement upon the interstate movement of commerce, as guaranteed by the United States Constitution. Two fundamental questions usually face a court when deciding an interstate commerce

case. First, whether or not the commodity, good or article is in interstate commerce. Secondly, if the commodity is in interstate commerce, is the state placing a direct burden upon it.

It is, of course, fundamental that all commerce which has an interstate character at some point reaches a place where its interstate character and incident immunities under the commerce clause are completely lost and becomes subject to local laws relating to it. It is not, however, always easy to determine the exact point when any given shipment in interstate commerce comes to an end or its final point of rest. In the present case the plaintiff ships its cattle from a point outside of the state of South Dakota to its packing plant to Rapid City, South Dakota. The question here, then, is whether the shipment of cattle which started its journey in interstate commerce has ceased its interstate movement for more than a temporary rest or temporary interruption before it continues on in interstate commerce. Numerous cases have found that where goods or commodities are shipped to a certain point for the purpose of manufacture, processing or the like, and are again shipped from that point to destinations afterwards determined by the demand of business, the two shipments are considered separate. *See, Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1934); *Swift & Company v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1904); *Peterson v. Valley Packing Co.*, 202 Or. 489, 276 P.2d 403 (1954). It would appear to this Court that when the plaintiff unloads the cattle that have been transported in from a foreign state, the interstate character of the shipment is lost, at least until the animals are processed and a new interstate shipment begins.

 Assuming, however, that it is determined that the plaintiff's shipment of cattle is in interstate commerce and that the interstate character is not destroyed by the processing of the cattle at the plaintiff's packing plant, the question then becomes whether the South Dakota brand inspection is a direct burden on interstate commerce. Of course it is well known that the mere fact a state statute or regulation interferes with interstate commerce does not in and of itself make the statute or regulation invalid. Only where a state statute or regulation directly or by its necessary operation, prevents, obstructs or places a direct burden upon interstate commerce, will it be held to be invalid. Inspection laws in the past have not been found to be repugnant to the commerce clause, where they do not place an unreasonable burden upon interstate commerce. *Mintz v. Baldwin*, 289 U.S. 346, 53 S.Ct. 611, 77 L.Ed. 1245 (1932); *New Mexico v. Denver & R.G.R. Co.*, 203 U.S. 38, 27 S.Ct. 1, 51 L.Ed. 78 (1906); *Swift & Co. v. Peterson*, 192 Or. 97, 233 P.2d 216 (1951). It cannot be envisioned by this Court how the act of inspection by South Dakota authorities of the plaintiff's cattle prior to their slaughter, could be considered an unreasonable burden on interstate commerce. As was stated in the *New Mexico v. Denver & R.G.R. Co.*, *supra*, in passing on a New Mexico hide inspection law:

"The law under consideration, designed to prevent the clandestine removal of property in which a large number of the people of the territory are interested, seems to us an obvious rightful exercise of its power. It is true it affects interstate commerce, but we do not think such was its primary purpose, and while it may have an effect to levy a tax upon this class of property, the main purpose evidently was to protect the people against fraud and wrong." *Id.*, 203 U.S. at 55, 27 S.Ct. at 5.

### IV.

 The plaintiff's fourth argument is that the South Dakota brand inspection laws deny it the equal protection of the laws, as guaranteed by the United States Constitution. The plaintiff does not argue with the authority of the State

of South Dakota to designate only the western half of the state as the brand inspection area, rather, the plaintiff argues that it is being denied equal protection of the law by the fact that it is the only packer within the brand inspection area which is engaged in interstate commerce. Since the defendant does not contend that a fundamental right is being infringed upon, the standard on review of a legislative classification will not be set aside if a rational basis exists to sustain it. *See, Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L. Ed.2d 282 (1973); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Schilb v. Kuebel,* 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

The South Dakota Supreme Court as recently as 1974, in the case of *State v. Smith,* S.D., 216 N.W.2d 149, passed on the question of whether the legislative classification establishing a brand inspection area was a denial of equal protection. In finding that the legislative classification creating the brand inspection area was not a denial of equal protection of the law, the South Dakota Supreme Court stated:

> "Legislative classifications are only invalid where the classification is arbitrary and unreasonable. Furthermore, the equal protection clause relates to equality between persons rather than between areas. There is no prohibition against legislation which is limited as to the territory within which it is to operate. *Central Lumber Company v. State of South Dakota,* 226 U.S. 157 [33 S.Ct. 66, 57 L. Ed. 164] (1912)." 216 N.W.2d at 151.

As the South Dakota Supreme Court stated, the fact that a brand inspection area does not include the entire state of South Dakota does not mean that the legislative classification denies plaintiff the equal protection of law, solely and only because the entire state was not within the classification.

Plaintiff, however, argues that since it is the only packing plant located within the brand inspection area it is being denied equal protection of the law as to its competitors in South Dakota who are located outside the inspection area. Since the law does not require that the whole state be incorporated within the legislative classification, the question becomes one of whether the class of persons that plaintiff belongs to within the legislative classification are treated equally. The state statute in question reads as follows:

> "It shall be unlawful for any butcher or packer engaged in the slaughter of cattle within the livestock ownership inspection area to kill or otherwise dispose of any cattle, until such cattle have received an ownership inspection and a certificate of such inspection from the state brand board, or its authorized agent, is filed and made part of his permanent records." S.D.C.L. § 40–20–29.

The determination by the legislature that all animals being processed by either a packer or butcher should have an ownership inspection prior to their slaughter can hardly be argued as unreasonable. Thus, the classification made by the statute has a reasonable basis in fact. The plaintiff, however, argues that he is the only packer that is affected by the act. Thus, at the present time the plaintiff by itself constitutes one of the classifications enumerated by the act. The mere fact that plaintiff is the only member of the class, and that he is competing with persons located outside the inspection area, is not a valid equal protection argument. The mere fact that only one party operates a business that is affected by a regulation or statute passed pursuant to a state's police powers does not in and of itself show arbitrary or unreasonable discrimination in violation of the equal protection clause. *See, Texas Co. v. City*

*of Tampa*, 100 F.2d 347 (5th Cir. 1938). Thus, the plaintiff's equal protection argument must fail, since were another "packer" to begin operation in the brand inspection area tomorrow, it would be equally subject to the law in question.

### V.

The plaintiff's fifth and final argument is that the Packers and Stockyards Act, 7 U.S.C. § 181, *et seq.* preempts the State of South Dakota from carrying on livestock ownership inspections at the plaintiff's packing plant. It is obvious of course, that where Congress has legislated upon a subject which is within its control, and has manifested its intention to deal therewith in full, the authority of the states is necessarily excluded, and any state legislation regulating the subject is void. On the other hand, federal regulation may occupy only a limited portion of a regulatory field on a particular subject matter, leaving unimpaired the rights of the several states to enact regulations covering other aspects of the subject. *Savage v. Jones*, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1911). The United States Supreme Court in the case of *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L. Ed.2d 852 (1960), reiterated the basic rule in determining whether a state regulation had been preempted by federal action, when it stated:

"In determining whether state regulation has been pre-empted by federal action, 'the intent to supersede the exercise by the state of its police power as to matters not covered by the federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the Act of Congress, fairly interpreted, is in actual conflict of the law of the state.'" *Id.* at 443, 80 S.Ct. at 816. (Citations omitted.)

In viewing the Packers and Stockyards Act, and the case law interpreting the statute, the only conclusion that can be reached is that this is legislation of a limited character. The case law interpreting the purpose of this statute has been consistent in stating that the purpose of the act was to rid the packing industry of many of their monopolistic and discriminatory practices. *See, Denver Union Stockyard Co. v. Producers Livestock Marketing Association*, 356 U.S. 282, 78 S.Ct. 738, 2 L.Ed.2d 771 (1958). In fact, some case law has specifically stated that this act is not intended to regulate the entire business of the livestock and meat industry or to supersede local laws. *The DeVries v. Sig Ellingson & Co.*, 100 F.Supp. 781 (D.C. Minn.1951) ; *Birmingham v. Rice Brothers*, 238 Iowa 410, 26 N.W.2d 39 (1947).

Even without the benefit of any case law it is easily determined by a review of the statutes that the Packers and Stockyards Act is not in conflict with the South Dakota statute requiring brand inspections at packing plants. The portion of the Packers and Stockyards Act which deals with packing plants is entirely aimed at ridding the industry of monopolistic, discriminatory or unfair trade practices. With this purpose in mind, it is difficult to conceive how the South Dakota brand inspection laws could conflict with the intent of that statute. Thus, this Court cannot conclude that the act of Congress, "fairly interpreted, is in actual conflict with the law of the state." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. at 443, 80 S.Ct. at 816.

### VI.

In conclusion, it is this Court's finding that the plaintiff has failed to show that the South Dakota brand inspection laws deprive it of any constitutional right guaranteed by the United States Constitution. Therefore, in view of the foregoing, the plaintiff's request for injunctive relief will be denied and the action will be dismissed. The foregoing

shall constitute the findings of fact and conclusions of law in this case in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. The prevailing party shall prepare the necessary order to effectuate the foregoing decision of this Court.