39 F.3d 1188
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rudy G. STANKO, Plaintiff-Appellant,
v.
STATE OF MONTANA; James Webber; Clyde R. Husby; Rob
Tierney, Defendants-Appellees,
 No. 93-35948.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 7, 1994.*
Decided Oct. 31, 1994.
 
 Before: LAY,** TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Rudy Stanko appeals, pro se, the dismissal of his complaint alleging that the Montana Livestock Marketing Act ("the Act") is unconstitutional. In particular, Stanko claims the licensing requirements and inspection provisions of the Act as written and enforced: 1) exceed Montana's police power; 2) deny him the equal protection of the law; 3) authorize searches and seizures that are prohibited by the Fourth Amendment; 4) prevent him from working in his chosen profession; 5) impair his contractual obligations in violation of the Contracts Clause; and 6) unduly burden interstate commerce in violation of the Commerce Clause. We find dismissal was appropriate and we affirm.
 
 
 3
 The Act, Mont.Code Ann. Secs. 81-8-211 to -279 (1993) gives the Livestock Department ("the Department") power to regulate livestock marketing. The Act requires livestock marketers and dealers be licensed and report on their sales and purchases. It allows inspectors from the Department to conduct livestock inspections both to verify ownership and to check for disease. The Act also permits fines and jail sentences to be imposed on knowing violators of the Act.
 
 
 4
 Stanko is a cattle "selector" in Montana: He buys and sells cattle for his out-of-state employers. He admits he does not have a livestock dealer's license. He petitioned in district court, requesting the court declare the Act unconstitutional. He alleges he has been cited three times for violations of the Act.
 
 
 5
 In April 1993, the State ordered him to cease acting as a cattle buyer. In May 1993, Stanko was cited for failure to permit an ownership inspection of cattle in his possession. Also in May 1993, he was cited for a shipping violation.[1] Stanko claims he faces up to six months in jail and a $500 fine for each violation. He also alleges the Department has deliberately singled him out for prosecution and harassment while permitting others to operate without a license.[2]
 
 
 6
 The State filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and claimed it was immune from suit under the Eleventh Amendment. The district court rejected the Eleventh Amendment argument but granted the motion to dismiss under Fed.R.Civ.P. 12(b)(6) based on Stanko's failure to state a claim upon which relief could be granted. Stanko appealed.
 
 
 7
 On a motion to dismiss for failure to state a claim, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987) (citations omitted). When the complaint is submitted by a pro se plaintiff, this court "will not affirm a dismissal for failure to state a claim unless 'it clearly appears ... that the deficiency cannot be overcome by amendment.' " Vincent v. Trend Western Technical Corp., 828 F.2d 563, 570 (9th Cir.1987) (quoting Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir.1980)).
 
 Police Power
 
 8
 Stanko claims the State has the burden of showing the Act has a legitimate purpose. He claims the Act has created an inefficient bureaucracy that burdens the livestock industry and consumers.
 
 
 9
 The test for whether a state law is a valid exercise of its police power is whether the law is rationally related to a legitimate state purpose. Sligh v. Kirkwood, 237 U.S. 52, 61 (1915). The Acts's stated purposes are to: 1) simplify, clarify, and modernize the law governing livestock marketing businesses and livestock marketing transactions; 2) encourage, stimulate, and stabilize the livestock economy of the state; and 3) promote open, free, and competitive factors in the marketplace in relation to all market conditions involving the sale and purchase of livestock. Mont.Code Ann. Sec. 81-8-212 (1993). The State argues the regulations requiring inspection and licensing within the industry are rationally related to these purposes. In upholding a similar livestock inspection law in South Dakota, the district court of South Dakota held:
 
 
 10
 The fundamental basis of course for the legislature passing livestock inspection laws is to set up a system where ownership can readily be determined, and thus hopefully assisting in the prevention and detection of theft of livestock, especially in areas where there is still a considerable amount of open range. It can hardly be argued that this basic function and purpose would be outside the police power of the state of South Dakota.
 
 
 11
 Black Hills Packing Co. v. S.D. Stockgrowers Ass'n, 397 F.Supp. 622, 625 (D.S.D.1975).
 
 
 12
 Accepting the allegations in the complaint as true, Stanko has nonetheless failed to make out a claim that the Act exceeds the State's police power. Mere increased cost to those in the livestock industry or to ultimate consumers does not make the Act invalid. The district court did not err in dismissing this claim.
 
 Equal Protection
 
 13
 Stanko next contends the Act denies him equal protection of the law as guaranteed by the Fourteenth Amendment. He first argues the Act creates an arbitrary distinction between licensed and unlicensed livestock dealers and grants licensed dealers privileges not granted to unlicensed dealers. Because Stanko has not claimed the State has abridged a fundamental right or created a suspect classification, his equal protection claim fails unless he can show the classification created by the statute is not rationally related to a legitimate state interest. City of New Orleans v. Duke, 427 U.S. 297, 303 (1976). This argument fails because the Act draws no distinction between different categories of individuals, but instead requires all livestock dealers to obtain a license.
 
 
 14
 Stanko then alleges state authorities have singled him out for prosecution, although he does not explain why he believes the authorities have done so. Although prosecutorial discretion is broad, it is subject to constitutional constraints; the decision to prosecute may not be based on " 'an unjustifiable standard such as race, religion, or other arbitrary classification.' " Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962). Stanko fails to allege that state authorities are targeting him based on any "unjustifiable standard." Thus, this argument is also defeated and Stanko's equal protection claim fails.
 
 Fourth Amendment
 
 15
 Stanko next contends the Act violates the Fourth Amendment by authorizing two kinds of warrantless searches. First, the Act authorizes inspections of livestock intended for sale to determine ownership.[3] Mont.Code Ann. Sec. 81-3-203 (1993). Second, the Act permits livestock inspectors to "enter upon the premises where livestock is being held or sold" to determine "whether a violation of the law is being committed or is likely to be committed."[4] Mont.Code Ann. Sec. 81-8-261 (1993).
 
 
 16
 Generally, administrative searches of commercial property must be supported by a warrant,[5] but the Court has recognized exceptions to this rule for heavily regulated industries in which individuals have a reduced expectation of privacy.[6] In New York v. Burger, 482 U.S. 691 (1987), the Court listed several factors it considered relevant in determining whether an industry is pervasively regulated. The determination is guided by the pervasiveness and regularity of the regulation. Id. at 701. The duration of the regulatory scheme is also an important factor. Id.
 
 
 17
 Burger also held a warrantless administrative search must be reasonable, and articulated a three-part test to assist in making this determination. Id. at 702. First, there must be a substantial government interest behind the regulatory scheme. Second, the warrantless inspections must be necessary to further the regulatory scheme. Third, the inspection program must be conducted with reasonable time and scope limitations. Id. at 703.
 
 
 18
 Stanko argues the livestock industry is not a pervasively regulated industry. It may be the industry of raising cattle is not pervasively regulated, there is nothing in the record that speaks to that point. But the industry of concern here is not the raising of livestock, but the marketing of livestock. The very existence of the Livestock Marketing Act and the Department of Livestock belies the claim that this industry is not pervasively regulated. There is a substantial government interest in inspecting livestock to deter theft and detect disease, and those objectives require warrantless inspections. There is no allegation the inspections are made at unreasonable times or are unreasonable in scope.
 
 Right to Work
 
 19
 Next, Stanko claims the Act violates his right to work in his chosen profession by requiring him to obtain a license. Mont.Code Ann. Secs. 81-8-213(5), 81-8-271. This court has held the right to engage in a chosen profession is not a fundamental right; rather, a licensing statute is upheld if it bears a rational relation to a legitimate state interest. Lupert v. California State Bar, 761 F.2d 1325, 1327-28 (9th Cir.1985).
 
 
 20
 The State contends the licensing provisions merely ensure the licensee is fit to buy and sell livestock. A license is denied if the applicant is not financially sound, if he has knowingly made false or misleading statements as to the health or physical condition of livestock, or if he has engaged in other dishonest conduct. Mont.Code Ann. Sec. 81-8-273 (1993). The district court did not err in finding these requirements rationally related to the Act's purposes. Stanko failed to make out a claim that his right to work in his chosen profession is abridged by the Act.
 
 Contracts Clause
 
 21
 Stanko next alleges the Act violates the Contracts Clause of the United States Constitution by not permitting him to buy and sell livestock in Montana without a license because that interferes with his contractual obligations to his employer. The State argues it is specious for Stanko to suggest that because he is required to obtain a livestock dealer's license, his right to contract has been impaired in any way. As long as the legislature's choice was reasonable in relation to its expressed goals, it will withstand attack under the Contract Clause. United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 22-23 (1977). We affirm the court's dismissal of this claim because the provisions of the Act are rationally related to its purposes.
 
 Commerce Clause
 
 22
 Finally, Stanko alleges the Act violates the Commerce Clause. He alleges that:
 
 
 23
 During the month of May, 1993, the defendants ordered the Petitioner to appear in Justice Court in Yellowstone County for the alleged crime of shipping cattle through Montana that were brought in Wyoming and delivered in St. Paul, Minnesota, for slaughter. This order is in violation of the commerance [sic] clause.
 
 
 24
 The district court dismissed this claim because Stanko had failed to "state any specific burdens on interstate commerce." The court reviewed the text of the statute in its entirety and concluded none of its provisions unduly burdened interstate commerce. We agree.
 
 
 25
 When this court has before it a pro se litigant, it will not dismiss unless it is clear amendment could not cure the deficiencies of the complaint. Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir.1980). Leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). We "strictly review for abuse of discretion the denial of leave to amend pleadings." Jones v. Community Redevelopment Agency, 733 F.2d 646, 650 (9th Cir.1984). However, in the present case we find the district court did not abuse his discretion in refusing to provide leave to amend. Where it is apparent from the face of the complaint that no relief could be granted under any set of facts consistent with the allegations of the complaint, no useful purpose can be served to allow a petitioner leave to amend.
 
 
 26
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Petition states that "the defendants ordered [Stanko] to appear in Justice Court in Yellowstone County for the alleged crime of shipping cattle through Montana that were bought in Wyoming and delivered in St. Paul, Minnesota, for slaughter."
 
 
 [2]
 Stanko claims that "the defendant's [sic] enforcement of [the Act] have deliberately targeted [him] and are continuing to harass [him] with charges known to the defendants to be unfounded and or (sic) not supported by valid evidence." He contends that "others with the same situation" are permitted to "remain undisturbed."
 
 
 [3]
 Although the Mont.Code Ann. Sec. 81-3-203 (1993) states these inspections take place "upon the application of the owner or the duly authorized agent of the owner," Stanko points out that, because a livestock dealer cannot transport the cattle without a transportation certificate issued by the state stock inspector, the owner's consent is compulsory. When Stanko refused to submit to the inspection, the State charged him with violating the Act, a charge which Stanko says carries a possible penalty of a $500 fine and up to six months imprisonment
 
 
 [4]
 Stanko's Petition states he "is required to allow the defendants to search Fox feedlot without a warrant." Nothing in the record indicates where Fox feedlot is located or whether it is public property or private property belonging to Stanko or his employer
 
 
 [5]
 See See v. City of Seattle, 387 U.S. 541, 543 (1967)
 
 
 [6]
 See Donovan v. Dewey, 452 U.S. 594 (1981) (underground and surface mines); United States v. Biswell, 406 U.S. 311 (1972) (firearms and ammunition dealers); Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970) (liquor licensees)